**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

KELLY C.,                                                    Case No. 1:25-cv-11375

          *Plaintiff,*                                Patricia T. Morris
                                                                  United States Magistrate Judge

*v.*

COMMISSIONER OF SOCIAL
SECURITY,

          *Defendant.*

_____/

**MEMORANDUM OPINION AND ORDER ON**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 9, 11)**

**I.     CONCLUSION**

For the reasons set forth below, Plaintiff's motion for summary judgment

(ECF No. 9) is **DENIED**, the Commissioner's motion for summary judgment (ECF

No. 11) is **GRANTED**, and the decision of the administrative law judge (ALJ) is

**AFFIRMED**.

**II.    ANALYSIS**

**A.     Introduction and Procedural History**

On October 13, 2022, Plaintiff filed an application for Supplemental Security

Income, alleging disability beginning on December 15, 2009.  (ECF No. 6-1,

PageID.38).  The Commissioner initially denied the application on December 27,

2022, and on reconsideration on March 27, 2023.  (*Id.*).  Plaintiff then requested a hearing before an ALJ, which was held on March 21, 2024.  (*Id.*).  The ALJ issued a written decision on May 7, 2024, finding Plaintiff was not disabled.  (*Id.* at PageID.38–46).  Following the ALJ's decision, Plaintiff requested review from the Appeals Council, which denied the request on March 14, 2025.  (*Id.* at PageID.22–24).

Following the Appeals Council's denial of review, Plaintiff sought judicial review on May 12, 2025.  (ECF No. 1).  The parties consented to the Undersigned "conducting any or all proceedings in this case, including entry of a final judgment and all post-judgment matters."  (ECF No. 8).  The parties have since filed cross-motions for summary judgment for which briefing is complete.  (ECF Nos. 9, 11, 12).

## B.    Standard of Review

District courts have jurisdiction to review the Commissioner's final administrative decisions pursuant to 42 U.S.C. § 405(g).  The review is restricted solely to determining whether "the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record."  *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (citation modified).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th

2

Cir. 2007) (citation modified). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation modified).

A district court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Hum. Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). Courts will "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id.* (citation modified).

### C.    Framework for Disability Determinations

Disability benefits are available only to those with a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

(i) At the first step, [the ALJ] consider[s] [the claimant's] work activity, if any.  If [the claimant is] doing substantial gainful activity, [the ALJ] will find that [the claimant is] not disabled.

(ii) At the second step, [the ALJ] consider[s] the medical severity of [the claimant's] impairment(s).  If [the claimant] do[es] not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, [the ALJ] will find that [the claimant is] not disabled.

(iii) At the third step, [the ALJ] also consider[s] the medical severity of [the claimant's] impairment(s).  If [the claimant has] an impairment(s) that meets or equals one of [the] listings in appendix 1 of this subpart and meets the duration requirement, [the ALJ] will find that [the claimant is] disabled.

(iv) At the fourth step, [the ALJ] consider[s] [his or her] assessment of [the claimant's] residual functional capacity and . . . past relevant work. If [the claimant] can still do . . . past relevant work, [the ALJ] will find that [the claimant is] not disabled.

(v) At the fifth and last step, [the ALJ] consider[s] [his or her] assessment of [the claimant's] residual functional capacity and . . . age, education, and work experience to see if [the claimant] can make an adjustment to other work.  If [the claimant] can make an adjustment to other work, [the ALJ] will find that [the claimant is] not disabled.  If [the claimant] cannot make an adjustment to other work, [the ALJ] will find that [the claimant is] disabled.

20 C.F.R. § 404.1520(4); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by [his or] her impairments and the fact that [he or] she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The claimant must provide evidence establishing his or her residual functional capacity (RFC), which "is the most [the claimant] can still do despite [his or her] limitations," and is assessed using "all the relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 214 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. ALJ Findings

Following the five-step sequential analysis, the ALJ determined Plaintiff was not disabled. (ECF No. 6-1, PageID.46). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since October 13, 2022, the application date. (*Id.* at PageID.41). At step two, the ALJ found the following severe impairments: degenerative joint disease of the bilateral hips; degenerative disc

disease of the lumbar spine; and obesity.  (*Id.*).

At step three, the ALJ found none of the impairments, either independently or in combination, met or medically equaled in severity or duration the criteria of any listing.  (*Id.*).  Next, the ALJ found Plaintiff had the RFC

> to perform light work as defined in 20 CFR 416.967(b) except that she can never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; and she must avoid concentrated exposure to vibration.

(*Id.*).

At step four, the ALJ found Plaintiff was unable to perform any past relevant work.  (*Id.* at PageID.45).  However, at step five, the ALJ found other jobs in the national economy that Plaintiff could perform.  (*Id.* at PageID.45–46).  Specifically, the ALJ found Plaintiff could perform the requirements of a mail clerk (11,000 jobs in the national economy), a rental clerk (30,000), and a gasket inspector (16,000).[1]  (*Id.*).  The ALJ thus concluded Plaintiff was "not disabled."  (*Id.*).

### E.     Administrative Record

Plaintiff raises two issues on appeal.  First, she argues the ALJ failed to properly consider her need for a cane.  Second, she argues the ALJ erred by failing to properly evaluate a medical opinion.  While the Court has reviewed the entire

---

[1] Additionally, the ALJ noted that even if Plaintiff were only capable of sedentary work, she could nonetheless perform jobs such as order clerk (60,000), polisher (30,000), and assembler (50,000).  (ECF No. 6-1, PageID.46).

6

record, it will only summarize the evidence relevant to Plaintiff's issues on appeal.

As the ALJ noted, Plaintiff's medical record consists almost wholly of records from chiropractor appointments. (ECF No. 6-1, PageID.42). Throughout the relevant period, Plaintiff was treated for pain in her right anterior pelvis/hip, upper thoracic, mid thoracic, lower thoracic, right lower thoracic, lumbar, right lumbar, left sacroiliac, right sacroiliac, sacral, right posterior pelvis/hip, right buttock and right posterior thigh. (*E.g.*, *id.* at PageID.416). Throughout the treatment records, the range of motion in her spine was noted to be moderately or severely reduced with pain noted. (*Id.* at PageID.416, 418, 420, 422, 424, 426, 428, 430, 432, 434, 436, 438, 440, 442, 448, 451, 454, 462, 476, 496, 502, 504, 506, 508, 512, 894, 923, 925, 927, 929, 931, 933, 951, 953, 967, 981). At some of her appointments, Plaintiff reported her ability to sit, get in or out of a car, and lift had improved with a decrease of symptoms, and at other appointments she reported her symptoms and abilities had worsened or stayed the same. (*Compare, e.g., id.* at PageID.476, *with id.* at PageID.496, 508).

Medical records also logged Plaintiff's statements that she used a cane. (*Id.* at PageID.354, 358, 362, 366, 373, 377, 381, 386, 391, 552, 557, 901, 906). At a September 2023 appointment, Plaintiff was noted to be "having a hard time walking, leaning more on her cane on the right." (*Id.* at PageID.894). At each of these appointments, she was noted to have an antalgic gait several times, though this

sometimes internally conflicted with denials of gait abnormality from the same appointment. (*Id.* at PageID.909–10, 1006, 1008, 1011).

In addition to the chiropractor appointments, Plaintiff treated her pain mainly with Motrin 800 as needed, ice packs, and marijuana. (*E.g.*, *id.* at PageID.58, 65, 389, 393). She was also prescribed a Lidoderm patch, 5% once a day in April 2023. (*Id.* at PageID.902). Prior to 2012, Plaintiff had treated her pain with pain injections and physical therapy, but the ALJ noted there was no evidence of such treatment in the current period. (*Id.* at PageID.43).

Plaintiff had an MRI of her spine in March 2022, finding:

> Vertebral body heights are maintained. There is a slight degenerative retrolisthesis of L5 on Sl. Multilevel disc space narrowing with associated disc desiccation from L3 through S1, most significant at L5-S1 with associated degenerative endplate changes. No acute fracture or traumatic subluxation. The bone marrow and visualized spinal cord are normal in signal. The conus medullaris terminates at Ll. Paraspinal musculature is unremarkable. No acute process involving the visualized intra-abdominal contents. Incidental note of a simple right renal cyst measuring 9 mm. Tarlov cyst at the level of S2-S3 measuring 1.2 cm.
>
> .   .   .
>
> L3-L4: Right paracentral disc protrusion that effaces the thecal sac without significant spinal canal stenosis. Bilateral facet hypertrophy and ligamentum flavum thickening without significant neuroforaminal stenosis.
>
> L4-L5: Shallow posterior disc bulge that effaces the thecal sac without significant spinal canal stenosis. Bilateral facet hypertrophy and ligamentum flavum thickening without significant neuroforaminal stenosis.
>
> 1.5-S1: Circumferential disc bulge with superimposed central disc

protrusion that effaces the thecal sac without significant spinal canal stenosis.

(*Id.* at PageID.401).  There were "no significant changes from [her] previous MRI" from 2019.  (*Id.* at PageID.454).  An x-ray of her hips from the same time noted "[n]o significant finding," though there were some degenerative changes at her bilateral sacroiliac joints.  (*Id.* at PageID.403).

State agency medical consultants evaluated Plaintiff and determined she could perform work at medium exertion, with some restrictions.  (*Id.* at PageID.105–06, 113–14).  The ALJ found these opinions not persuasive, finding Plaintiff could only perform work at a light exertional level.  (*Id.* at PageID.44).

Plaintiff testified she started using a cane for her left knee after surgery in 2012 and "can't walk without it" because one leg is shorter than the other.  (*Id.* at PageID.63).  Other evidence will be discussed below as necessary.

### F.      Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision.  42 U.S.C. § 423(d)(5)(B).  The regulations, applicable to applications for disability benefits filed on or after the effective date of March 27, 2017, such as Plaintiff's application here, distinguish between acceptable medical sources, medical sources, and nonmedical sources.  An acceptable medical source means a medical source who is a:

(1) Licensed physician (medical or osteopathic doctor);

9

(2) Licensed psychologist, which includes:

  (i)   A licensed or certified psychologist at the independent practice level; or

  (ii)  A licensed or certified school psychologist, or other licensed or certified individual with another title who performs the same function as a school psychologist in a school setting, for impairments of intellectual disability, learning disabilities, and borderline intellectual functioning only;

(3) Licensed optometrist for impairments of visual disorders, or measurement of visual acuity and visual fields only, depending on the scope of practice in the State in which the optometrist practices;

(4) Licensed podiatrist for impairments of the foot, or foot and ankle only, depending on whether the State in which the podiatrist practices permits the practice of podiatry on the foot only, or on the foot and ankle;

(5) Qualified speech-language pathologist for speech or language impairments only. For this source, *qualified* means that the speech-language pathologist must be licensed by the State professional licensing agency, or be fully certified by the State education agency in the State in which he or she practices, or hold a Certificate of Clinical Competence in Speech-Language Pathology from the American Speech-Language-Hearing Association;

(6) Licensed audiologist for impairments of hearing loss, auditory processing disorders, and balance disorders within the licensed scope of practice only . . . ;

(7) Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title, for impairments within his or her licensed scope of practice . . . ; or

(8) Licensed Physician Assistant for impairments within his or her licensed scope of practice . . . .

20 C.F.R. § 404.1502(a) (2021). A medical source is

> an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law, or an individual who is certified by a State as a speech-language pathologist or a school psychologist and acting within the scope of practice permitted under State or Federal law.

*Id.* § 404.1502(d). In contrast, a nonmedical source is "a source of evidence who is not a medical source." *Id.* § 404.1502(e). "This includes, but is not limited to: (1) [the claimant]; (2) Educational personnel (for example, school teachers, counselors, early intervention team members, developmental center workers, and daycare center workers); (3) Public and private social welfare agency personnel; and (4) Family members, caregivers, friends, neighbors, employers, and clergy." *Id.*

The Social Security Administration (SSA) "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." *Id.* § 404.1520c(a). "The most important factors [the SSA] consider[s] when evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id.* The SSA will consider several factors when it contemplates "the medical opinion(s) and prior administrative medical findings" in a case. *Id.* § 404.1520c(c).

The first factor is "supportability." For this factor, "[t]he more relevant the

objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1).

The SSA will also consider the "consistency" of the opinion. In essence, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

In addition, the SSA will consider the source's "[r]elationship with the claimant." *Id*. § 404.1520c(c)(3). This factor includes analysis of:

(i)     Length of the treatment relationship. The length of time a medical source has treated [the claimant] may help demonstrate whether the medical source has a longitudinal understanding of [the claimant's] impairment(s);

(ii)    Frequency of examinations. The frequency of [the claimant's] visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of [the claimant's] impairment(s);

(iii)   Purpose of the treatment relationship. The purpose for treatment [the claimant] received from the medical source may help demonstrate the level of knowledge the medical source has of [the claimant's] impairment(s);

(iv)    Extent of the treatment relationship. The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help

demonstrate the level of knowledge the medical source has of [the claimant's] impairment(s);

(v)     Examining relationship. A medical source may have a better understanding of [the claimant's] impairment(s) if he or she examines [the claimant] than if the medical source only reviews evidence in [the claimant's] folder.

*Id.*

The fourth factor of the SSA's analysis is "specialization." In making this determination, the SSA will consider

[t]he medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.

*Id.* § 404.1520c(c)(4).

Finally, the SSA will consider "other factors." These may include any other information that "tend[s] to support or contradict a medical opinion or prior administrative medical finding." *Id.* § 404.1520c(c)(5). Other factors include "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." *Id.* Further, when the SSA considers "a medical source's familiarity with the other evidence in a claim, [it] will also consider whether new evidence [it] receive[s] after the medical evidence source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative

13

medical finding more or less persuasive." *Id.*

As to the duty to articulate how persuasive the medical opinions and prior administrative medical findings are considered, the new regulations provide "articulation requirements." The ALJ will consider "source-level articulation." Pursuant to this requirement,

> [b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for [the ALJ] to articulate in each determination or decision how [he or she] considered all of the factors for all of the medical opinions and prior administrative medical findings in [each] case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative finding(s), [the ALJ] will articulate how [he or she] considered the medical opinions or prior administrative findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.

*Id.* § 404.1520c(b)(1). The regulation reiterates that the ALJ is "not required to articulate how [he or she] considered each medical opinion or prior administrative finding from one medical source individually." *Id.*

The regulations stress that the "factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors [the SSA] consider[s] when [it] determine[s] how persuasive [it] find[s] a medical source's medical opinions or prior administrative medical findings to be." *Id.* § 404.1520c(b)(2). As such, the SSA

> will explain how [it] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative

medical findings in [the claimant's] determination or decision. [The SSA] may, but [is] not required to, explain how [it] considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when [it] articulate[s] how [it] consider[s] medical opinions and prior administrative medical findings in [the claimant's] case record.

*Id.*

When medical opinions or prior administrative findings are "equally persuasive," "well-supported," and "consistent with the record" "about the same issue," "but are not exactly the same, [the ALJ] will articulate how [he or she] considered the other most persuasive factors . . . for those medical opinions or prior administrative medical findings in [the claimant's] determination or decision." *Id.* § 404.1520c(b)(3). The regulations clarify that the SSA is "not required to articulate how [it] considered evidence from nonmedical sources using the requirements of paragraphs (a)–(c) of this section." *Id.* § 404.1520c(d).

In addition, the regulations expressly state that the SSA will not consider "evidence that is inherently neither valuable nor persuasive" and "will not provide any analysis about how [it] considered such evidence in [its] determination or decision, even under § 404.1520c." *Id.* § 404.1520b(c). The regulations categorize evidence that is inherently neither valuable nor persuasive as: "[d]ecisions by other governmental and nongovernmental entities"; "[d]isability examiner findings," meaning "[f]indings made by a State agency disability examiner made at a previous level of adjudication about a medical issue, vocational issue, or the ultimate

15

determination about whether [the claimant is] disabled"; and "[s]tatements on issues

reserved to the Commissioner[,]" including

> (i) Statements that [the claimant is] or [is] not disabled, blind, able to work, or able to perform regular or continuing work;
>
> (ii) Statements about whether or not [the claimant has] a severe impairment(s);
>
> (iii) Statements about whether or not [the claimant's] impairment(s) meet the duration requirement . . . ;
>
> (iv) Statements about whether or not [the claimant's] impairment(s) meets or medically equals any listing in the Listing of Impairments . . . ;
>
> (v) Statements about what [the claimant's] residual functional capacity is using [the SSA's] programmatic terms about the functional exertional levels . . . instead of descriptions about [the claimant's] functional abilities and limitations . . . ;
>
> (vi) Statements about whether or not [the claimant's] residual functional capacity prevents [the claimant] from doing past relevant work . . . ;
>
> (vii) Statements that [the claimant] [does] or [does] not meet the requirements of a medical-vocational rule . . . ; and
>
> (viii) Statements about whether or not [the claimant's] disability continues or ends when [the SSA] conduct[s] a continuing disability review.

*Id.* § 404.1520b(c)(3).

The regulations also provide that

> [b]ecause a decision by any other governmental agency or a nongovernmental entity about whether [a claimant is] disabled, blind, employable, or entitled to any benefits is based on its rules, it is not

16

binding on [the SSA] and is not [its] decision about whether [the claimant is] disabled or blind under [SSA] rules.

*Id.* § 404.1504.   Therefore, the SSA "will not provide any analysis in [its] determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether [the claimant is] disabled, blind, employable, or entitled to any benefits." *Id.*  The SSA will, however, "consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that [it] receive[s] as evidence in [a] claim . . . ." *Id.*

The regulations clarify that "[o]bjective medical evidence means signs, laboratory findings, or both." *Id.* § 404.1502(f).  Signs are defined as "one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [the claimant's] statements (symptoms)." *Id.* § 404.1502(g).  Further, "[s]igns must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development or perception, and must also be shown by observable facts that can be medically described and evaluated." *Id.*  Laboratory findings "means one or more anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques," which "include chemical tests (such as blood tests),

17

electrophysiological studies (such as electrocardiograms and electroencephalograms), medical imaging (such as X-rays), and psychological tests." *Id.* § 404.1502(c).

The most recent amendments to the regulations also tweaked the manner in which the SSA evaluates symptoms, including pain:

> In determining whether [the claimant is] disabled, [the SSA will] consider all [the claimant's] symptoms, including pain, and the extent to which [the] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. [The SSA] will consider all [the claimant's] statements about [his or her] symptoms, such as pain, and any description [the claimant's] medical sources or nonmedical sources may provide about how the symptoms affect [the claimant's] activities of daily living and [his or her] ability to work.

*Id.* § 404.1529(a). But the SSA clarified that

> statements about [the claimant's] pain or other symptoms will not alone establish that [the claimant is] disabled. There must be objective medical evidence from an acceptable medical source that shows [the claimant has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence of [the claimant's] pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that [the claimant is] disabled.

*Id.* Further, "[i]n evaluating the intensity and persistence of [the claimant's] symptoms, including pain, [the SSA] will consider all of the available evidence, including [the claimant's] medical history, the medical signs and laboratory findings, and statements about how [the claimant's] symptoms affect [him or her]." *Id.* The

SSA will "then determine the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [the claimant's] symptoms affect [his or her] ability to work." *Id.*

Finally, the SSA noted that "[b]ecause symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, [it] will carefully consider any other information [the claimant] may submit about [his or her] symptoms." *Id.* § 404.1529(c)(3). This other information may include "[t]he information that [the claimant's] medical sources or nonmedical sources provide about [the claimant's] pain or other symptoms," such as "what may precipitate or aggravate [the claimant's] symptoms, what medications, treatments or other methods [the claimant uses] to alleviate them, and how the symptoms may affect [the claimant's] pattern of daily living," which "is also an important indicator of the intensity and persistence of [the claimant's] symptoms." *Id.*

> Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions that [the claimant's] medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account . . . . [The SSA] will consider all of the evidence presented, including information about [the claimant's] prior work record, [the claimant's] statements about [his or her] symptoms, evidence submitted by [the claimant's] medical sources, and observations by [the SSA's] employees and other persons.

*Id.* Factors relevant to a claimant's symptoms, such as pain, include:

    (i)      [D]aily activities;

    (ii)     The location, duration, frequency, and intensity of . . . pain or other symptoms;

    (iii)    Precipitating and aggravating factors;

    (iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

    (v)     Treatment, other than medication, . . . received for relief of . . . pain or other symptoms;

    (vi)    Any measures . . . used to relieve . . . pain or other symptoms.

*Id.*

The new regulations also impose a duty on the claimant: "[i]n order to get benefits, [the claimant] must follow treatment prescribed by [his or her] medical source(s) if this treatment is expected to restore [his or her] ability to work." *Id.* § 404.1530(a). Stated differently, "[i]f [the claimant does] not follow the prescribed treatment without a good reason, [the SSA] will not find [the claimant] disabled or, if [the claimant is] already receiving benefits, [the SSA] will stop paying . . . benefits." *Id.* § 404.1530(b). Acceptable (or "good") reasons for failure to follow prescribed treatment include:

    (1)     The specific medical treatment is contrary to the established teaching and tenets of [the claimant's] religion;

    (2)     The prescribed treatment would be cataract surgery for one eye,

when there is an impairment of the other eye resulting in a severe loss of vision and is not subject to improvement through treatment;

(3)     Surgery was previously performed with unsuccessful results and the same surgery is again being recommended for the same impairment;

(4)     The treatment because of its magnitude (e.g., open heart surgery), unusual nature (e.g., organ transplant), or other reason is very risky for [the claimant]; or

(5)     The treatment involves amputation of an extremity, or a major part of an extremity.

*Id.* § 404.1530(c).

## G.     Argument and Analysis

As discussed above, Plaintiff first argues the ALJ failed to properly consider her need for a cane.  Second, she argues the ALJ erred by failing to properly evaluate a medical opinion.

### 1.     Need for a Cane

Plaintiff argues the ALJ erred by not considering her need for a cane.  Both parties agree that social security ruling 96-9p is instructive here:

To find that a hand-held assistive device is medically required, there must be *medical documentation establishing the need* for a hand-held assistive device to aid in walking or standing, *and describing the circumstances for which it is needed* (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).

SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996) (emphasis added).  Plaintiff

"bears the burden of proving the existence and severity of limitations caused by her impairments and that she has a more restrictive RFC than that assessed by the ALJ." *Ashley D. v. Comm'r of Soc. Sec.*, 2023 WL 5266849, at *10 (E.D. Mich. July 17, 2023) (citation modified), *report and recommendation adopted*, 2023 WL 5251849 (E.D. Mich. Aug. 15, 2023).

Plaintiff points to her testimony and treatment notes as evidence establishing the need for a cane.  However, neither of these is sufficient medical documentation establishing the need for a cane.  *See Mitchell v. Comm'r of Soc. Sec.*, 2014 WL 3738270, at *12 (S.D. Ohio July 29, 2014) (collecting cases establishing plaintiff's testimony does not qualify as medical documentation establishing need for a cane); *Cline v. Comm'r of Soc. Sec.*, 2025 WL 850272, at *8 (N.D. Ohio Mar. 18, 2025) ("An ALJ may thus find that a handheld assistive device is not medically necessary, even if a claimant uses a cane, if the record evidence does not otherwise disclose the type of information SSR 96-9p requires." (quotation omitted)), *report and recommendation adopted*, 2025 WL 1002189 (N.D. Ohio Apr. 3, 2025).  Nor does the ALJ's observation of Plaintiff having a cane at the hearing establish the medical necessity of such.

Moreover, the treatment notes cited by Plaintiff reflect only her self-reported statements concerning her systems; not objective findings from a medical source or a medical opinion based on such.  Plaintiff's own statements are considered a

nonmedical source.  20 C.F.R. § 404.1502(e).  The ALJ is "not required to articulate how [he] considered [this] evidence."  *Id.* §§ 404.1502(d); 404.1520c(d).  The closest Plaintiff comes is Dr. Cara Phillips' observation at an appointment that Plaintiff was having a hard time walking that day and leaning more on her cane.  (ECF No. 6-1, PageID.894).  However, this assessment still does not amount to medical documentation establishing the need for a cane.  *Jones v. Comm'r of Soc. Sec.*, 815 F. App'x 926, 931 (6th Cir. 2020) (holding mere notation from physical therapist indicating plaintiff came to appointment with a cane does not show medical necessity: "a single notation of 'cane' cannot possibly provide 'the circumstances for which [the assistive device] is needed.'" (quoting SSR 96-9p)).  And even if it did, it still does not describe the circumstances for which it is needed, such as the examples listed above in SSR 96-9p.  Based on this record, the ALJ was not required to include any restrictions in Plaintiff's RFC regarding use of a cane.

Plaintiff relies on *Cline* to argue the ALJ erred in insufficiently articulating Plaintiff's need for a cane.  (ECF No. 12, PageID.1080–81).  However, in *Cline*, the court first found Cline had met the first requirement of SSR 96-9p—showing the cane was medically necessary.  2025 WL 850272, at *8.  The court relied on Cline's prescription for a cane and two medical doctors' opinions regarding the necessity of a cane to determine Cline had shown a cane was medically necessary.  *Id.*  As discussed above, Plaintiff has not shown her cane was medically necessary and *Cline*

23

is therefore inapposite.

### 2. Opinion Evidence

Plaintiff next argues the ALJ erred when he failed to properly consider Dr. Niemi's opinion.  (ECF No. 9, PageID.1053 (citing ECF No. 6-1, PageID.897)).  This argument is not persuasive.

Dr. Niemi authored a "[t]o whomever it may concern" letter opining on Plaintiff's limitations:

> I am writing on behalf of [Plaintiff] who is currently under my care for primary care.  She has been a patient at our office since 2015.  I am writing in regards to her disability.
>
> [Plaintiff] has been unable to work for the past 14 years due to chronic pain r/t disc abnormalities in the lumbo-sacral region.  These abnormalities have been shown on multiple MRIs since 2012 and include bulging discs and degenerative changes.  She has tried multiple therapies to help alleviate the pain such as injections, oral medications and physical therapy.  These did not provide enough relief for her to be able to work.
>
> The pain she experiences affects her lower back and has now spread into her hips and R knee.  During episodic flares she isn't not [sic] able to walk.  This pain prevents her from being able to sit or stand for long periods of time.
>
> Due to the above reasons [Plaintiff] is unable to work.

(ECF No. 6-1, PageID.897).  The ALJ discussed Dr. Niemi's statement as follows:

> Statements that the claimant is disabled, unable to work, can or cannot perform a past job, meets a Listing, or any functionally equivalent assertion are not medical opinions, but are administrative findings dispositive of a case, requiring familiarity with the Regulations and legal standards set forth therein.  Such issues are reserved to the

24

> Commissioner, who cannot abdicate the statutory responsibility to determine the extent to which they are supported by the record (20 CFR 416.927(d)(2))

> These statements are thus not persuasive, and the assertion that the claimant has "tried multiple therapies to help alleviate the pain such as injections, oral medications and physical therapy" is not accurate during the relevant period. The longitudinal record shows no such treatment since 2022, and no follow-up regarding additional treatment options, such as nerve ablation, or surgical decompression or fusion.

(*Id.* at PageID.45).

Plaintiff does not challenge most of the ALJ's conclusions, instead focusing her argument on the ALJ's rejection of Dr. Niemi's opinion that Plaintiff's "pain prevents her from being able to sit or stand for long periods of time." (ECF No. 9, PageID.1054).

As a refresher, the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). An ALJ must explain his or her approach with respect to supportability and consistency when considering a medical opinion. *Id.* § 404.1520c(b). For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1). For consistency, "[t]he more consistent a medical opinion(s)

25

or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2). Importantly,

> The new regulation substantially reduces the ALJ's obligation to explain the basis for his or her assessment of medical opinions:
>
> > [Source-level articulation.] Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

*Adams v. Comm'r of Soc. Sec.*, No. 23-3284, 2023 WL 6366106, at *2 (6th Cir. Sept. 28, 2023) (quoting 20 C.F.R. § 404.1520c(b)(1)); *see also Robinson v. Comm'r of Soc. Sec.*, No. 22-1397, 2022 WL 17168444, at *2 (6th Cir. 2022) ("Even for a medical opinion, there is no requirement to cite to every piece of evidence or conclusion.").

The ALJ was therefore not required to go over Dr. Niemi's opinion line by

line when rejecting it.  It was enough to discuss the opinion as a whole and find it was not consistent or supported by the evidence in the record.  Like in *Adams*, Dr. Niemi's contemporaneous treatment notes do not indicate Plaintiff had significant sitting and standing limitations.   The ALJ discussed Plaintiff's conservative treatment of Motrin, Lidoderm patches, and chiropractor appointments over the alleged period of disability.  (ECF No. 6-1, PageID.43).  *Accord Adams*, 2023 WL 6366106, at *3.

Moreover, it is not clear what Dr. Niemi would limit Plaintiff to.  The ALJ is unable to know what a "long period of time" is according to Dr. Niemi.  Would that equate to a limit of occasionally sitting or standing?  Frequently?[2]  Something else? *See, e.g.*, *Schroeder v. Comm'r of Soc. Sec.*, No. 20-cv-10914, 2021 WL 2305623, at *13 (E.D. Mich. Apr. 21, 2021) ("ALJ did not err by declining to rely on [doctor's] opinion, which failed to specify the length of time [p]laintiff could stand or sit or any other specific limitations [p]laintiff may have."), *report and recommendation adopted*, 2021 WL 2292332 (E.D. Mich. June 4, 2021); *Hizer v. Comm'r of Soc. Sec.*, No. 19-cv-325, 2020 WL 3239228, at *5 (W.D. Mich. May 29, 2020) ("[T]he doctor's opinion that [p]laintiff's ability to stand, walk, and sit is 'limited' is vague and not necessarily inconsistent with the ALJ's RFC finding."), *aff'd*, 852 F. App'x

---

[2] "'Occasionally' means occurring from very little up to one-third of the time," whereas "'[f]requent' means occurring from one-third to two-thirds of the time."  SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983).

999 (6th Cir. 2021) (memorandum opinion); *Katelyn M. v. Comm'r of Soc. Sec.*, No. 23-cv-12276, 2024 WL 4124675 (E.D. Mich. Sept. 9, 2024) ("[A]n ALJ can properly discount the weight of an expert opinion when it is too vague and does not support specific functional limitations."); *Benson v. Saul*, No. 19-cv-02804, 2021 WL 1554219, at *5 (N.D. Ohio Jan. 11, 2021) ("Plaintiff would have this court require the ALJ to construe [doctor's] qualified limitations as an affirmative finding that such limitations are mandated.  The court declines to do so, as this would improperly alter the contents of the medical source's opinion."), *report and recommendation adopted sub nom.*, *Benson v. Comm'r of Soc. Sec.*, No. 19-cv-2804, 2021 WL 804150 (N.D. Ohio Mar. 2, 2021); *Quisenberry v. Comm'r of Soc. Sec.*, 757 F. App'x 422, 434 (6th Cir. 2018) (affirming ALJ's conclusion where discounted doctor's opinion was "quite vague").  Dr. Niemi's sit/stand opinion was vague and did not present the ALJ with an opportunity to properly weigh it.

Finally, to the extent Plaintiff argues the ALJ cherry-picked the evidence, this argument generally fails as a request to reweigh the evidence, which this Court may not do as long as substantial evidence supports the ALJ's findings.  *Adams*, 2023 WL 6366106, at *4.  Here, the ALJ did not commit any legal errors and his findings are supported by substantial evidence.  Therefore, the ALJ's decision is affirmed.

## III.  <u>ORDER</u>

For these reasons, Plaintiff's motion (ECF No. 9) is **DENIED**, the

28

Commissioner's motion (ECF No. 11) is **GRANTED**, and the ALJ's decision is

**AFFIRMED**.

      **IT IS SO ORDERED.**

Date: February 17, 2026                        S/PATRICIA T. MORRIS
                                                    Patricia T. Morris
                                                    United States Magistrate Judge